# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 4:20-CR-56-RSB-CLR-Def. 1, 2, 3** |
| | ) | |
| **SERENDIPITY BUSINESS** | ) | |
| **SOLUTIONS, LLC,** *et al.* | ) | |
| | ) | |

## DEFENDANTS NATALIE WU, TERRY WU, AND SERENDIPITY BUSINESS SOLUTIONS LLC'S JOINT MOTION FOR SEVERANCE UNDER RULE 8 AND RULE 14 AND MOTION TO STRIKE

Defendants Natalie Wu, Terry Wu and Serendipity Business Solutions, LLC ("Serendipity"), by and through their respective attorneys of record Marilyn E. Bednarski, Randy Sue Pollock, and Bruce Harvey, hereby move to sever Counts Two and Three from Count One in the Indictment filed July 8, 2020 (Dkt. 3, attached hereto as **Exhibit A**) based on misjoinder under Federal Rules of Criminal Procedure 8 and 14. The Defendants also move to strike all references to the marijuana and money laundering conspiracies if their motion to sever is granted. These Motions are based upon the attached Memorandum of Law, Exhibit A, and all files and records in this case.

Dated: December 9, 2021

Respectfully submitted,

By, *[signature]*

MARILYN E. BEDNARSKI

Attorney for **Defendant Natalie Wu**
Ca. Bar No. 105322
975 East Green Street
Pasadena, CA. 91106
Email: mbednarski@mbllegal.com
Telephone: (626) 844-7660
Fax: (626) 844-7670

1

Dated: December 9, 2021                    Respectfully submitted,

                                           By, /s/ Randy Sue Pollock

                                           RANDY SUE POLLOCK

                                           Attorney for **Defendant Terry Wu**
                                           Ca. Bar No. 64493
                                           286 Santa Clara Avenue
                                           Oakland, CA. 94610
                                           Email: rsp@rspollocklaw.com
                                           Telephone: 510-736-9967
                                           Fax: 510-380-6551

Dated: December 9, 2021                    Respectfully submitted,

                                           By, /s/ Bruce S. Harvey
                                           LAW OFFICE OF BRUCE S. HARVEY

                                           Attorney for **Defendant**
                                           **Serendipity Business Solutions, LLC**
                                           Bruce S. Harvey, Georgia Bar No. 335175
                                           146 Nassau Street
                                           Atlanta, Georgia 30303
                                           (404) 659-4628

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 4

MEMORANDUM OF LAW ............................................................................................... 6

I.   Statement of Facts ...................................................................................................... 6

   A.   Overview of the Indictment ................................................................................. 6

II.   Argument ................................................................................................................... 8

   A.   Counts Two and Three are Improperly Joined with Count One and Must Be Severed
        Under Fed. R. Crim. P. 8. ................................................................................... 8

   B.   No substantial identity of facts or participants exists between Counts Two and Three, and
        Count One. ........................................................................................................ 9

   C.   Significant gaps in time between conspiracies show that Counts One, Two, and Three are
        not a "Series of Acts" under Rule 8(b). ............................................................. 10

   D.   Count One does not share a substantial identity of facts with Counts Two and Three
        because of the lack of alleged overt acts attributable to Terry Wu and Natalie Wu......... 12

   E.   The Wus' Lack of Knowledge of the Marijuana and Money Laundering Conspiracies
        Further Indicates that Count One Is Not Part of a Series of Acts with Counts Two and
        Three. ............................................................................................................... 14

        1.   Count One Should Be Severed from Counts Two and Three Under Rule 14 Because
             of the Risk of Prejudice to Natalie Wu and Terry Wu................................. 16

   F.   Litigating Count One with Counts Two and Three would prejudice Natalie Wu and Terry
        Wu because the jury would hear evidence about conspiracies the Wus had little or
        nothing to do with. ............................................................................................ 17

   G.   Litigating Count One with Counts Two and Three would force the Wus to choose
        between antagonistic defenses, thus giving rise to compelling prejudice if severance is
        not granted. ...................................................................................................... 19

III.   Conclusion ............................................................................................................. 20

   CERTIFICATE OF SERVICE ...................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*United States v. Blankenship*,
 382 F.3d 1110 (11th Cir. 2004) .........................................................................16

*United States v. Branker*,
 395 F.2d 881 (2nd Cir. 1968) ............................................................................18

*United States v. Caldwell*,
 594 F.Supp. 548 (N.D. Ga. 1984) ...............................................................10, 13

*United States v. Corbin*,
 734 F.2d 643 (11th Cir. 1984) .............................................................................8

*United States v. Erwin*,
 793 F.2d 656 (5th Cir. 1986) .....................................................................17, 19

*United States v. Fortenberry*,
 914 F.2d 671 (5th Cir. 1990) .............................................................................17

*United States v. Gentile*,
 495 F.2d 626 (5th Cir. 1974) ......................................................................... 8-10

*United States v. Grassi*,
 616 F.2d 1295 (5th Cir. 1980) .............................................................................8

*United States v. Hassoun*,
 477 F.Supp.2d 1210 (S.D. Fla. 2007) ..................................................................19

*United States v. Jones*,
 No. CR 109-073, 2009 WL 2920894 (S.D. Ga. Sept. 11, 2009) ............................8

*United States v. LaBrunerie*,
 900 F.Supp. 1174 (W.D. Mo. 1995) ....................................................................14

*United States v. Lech*,
 161 F.R.D. 255 (S.D.N.Y.1995) ...........................................................................15

*United States v. Litwok*,
 678 F.3d 208 (2nd Cir. 2012) .....................................................................17, 18

*United States v. Marionneaux*,
 514 F.2d 1244 (5th Cir. 1975) .............................................................................8

*United States v. Morales*,
 868 F.2d 1562 (11th Cir. 1989) ...........................................................................9

*United States v. Morris*,
 176 F.Supp.2d 668 (N.D. Tex. 2001) ...................................................................13

*United States v. Nettles*,
 470 F.2d 547 (5th Cir. 1978) ...............................................................................9

*United States v. Ohle*,
 678 F.Supp.2d 215 (S.D.N.Y. 2010)................................................................. 14-16

*United States v. Rajaratnam*,
 753 F.Supp.2d 299 (S.D.N.Y. 2010).............................................15-16, 18-19

*United States v. Weaver*,
 905 F.2d 1466 (11th Cir. 1990) ...........................................................................9

*United States v. Wilson*,
 894 F.2d 1245 (11th Cir. 1990) ...........................................................................9

*Zafiro v. United States*,
 506 U.S. 534 (1993).............................................................................................16

**Rules**

Fed. R. Crim. P. 8 .................................................................................................... passim

Fed. R. Crim. P. 14 .................................................................................................16, 18, 20

## MEMORANDUM OF LAW

### I.      Statement of Facts

#### A.  Overview of the Indictment

The subject matter of this memorandum is the Indictment in this case, which was returned on July 8, 2020, by a federal grand jury in the Southern District of Georgia. The Indictment charged fourteen defendants, including twelve individuals and two companies, with involvement in conspiracies to commit wire and mail fraud (Count One), drug trafficking (Count Two), and money laundering (Count Three). The movants here were charged in all three counts.

International wildlife trafficking allegations play a major part in Counts One and Three. The overt acts related to wildlife trafficking form the overriding basis for Terry and Natalie Wu's alleged involvement in the crimes charged in Counts One and Three, but the vast majority of the overt acts in Counts One and Three relate to the marijuana and money laundering conspiracies, which are commingled with the wildlife trafficking overt acts.

No overt acts were alleged in Count Two, but overt acts related to both Counts Two and Three were alleged in Count One. See **Exh. A** "Overt Acts" at pp. 13-26. Overt acts alleged in Count Three relate exclusively to financial transactions identified only by amount and bank account number. *Id*. at pp. 31-33.

#### B.  Crimes Alleged Against Natalie Wu and Terry Wu

The Indictment alleges three crimes against Natalie Wu, Terry Wu and Serendipity. Count One charges a conspiracy between two companies, Serendipity and Phoenix Fisheries, and numerous individuals to commit wire and mail fraud in violation of Title 18 U.S.C. §1349[1], with

---

[1] To add to the confusion, Count One, Conspiracy to Commit Wire Fraud and Mail Fraud, lists 18 U.S.C. Section 1349 as the charging statute but that code section is "Attempt and Conspiracy." The crimes charged are Wire Fraud (18 U.S.C. Section 1343) and Mail Fraud (18 U.S.C. Section 1341) (Exh. A, pp.10)

the object of the conspiracy being to make money from illegal activities, including wildlife trafficking and drug trafficking, and then hiding the illegal proceeds. *Id*. at p. 9. In Count Two, the Defendants are charged with conspiring to possess and distribute marijuana in violation of Title 21 U.S.C. §846, and in Count Three they are charged with conspiring to launder money derived from the fraud and drug conspiracies in violation of Title 18 U.S.C. §1956(h).

Natalie Wu and Terry Wu are alleged to have unlawfully operated a shark fin business in California to ship shark fins to Hong Kong; purportedly, they used a front shark fin business in Florida [where shark fins could lawfully be imported and exported]. *Id*. at ¶9. The Indictment further alleges that the Wus played a part in unlawfully wiring money made from the scheme to deal in shark fins to third party business banks to hide illegal proceeds and promote the unlawful activity. *Id*. Regarding their specific roles, the Indictment alleges that Terry Wu was the operator of Defendant Serendipity, was responsible for ordering when to export shark fins for sale to conspirators in Hong Kong, and for authorizing payments for shark fins. *Id*. at ¶13. The Indictment alleges that Defendant Natalie Wu was the registered agent and manager of Defendant Serendipity, and was responsible for conducting financial transactions and signing checks for payments of shark fins. *Id*. at ¶14.

With respect to the drug trafficking allegation, the Indictment broadly alleges that Natalie Wu and Terry Wu played an unspecified role in unlawfully shipping marijuana from California to Savannah and elsewhere, and tried to hide the proceeds through purported seafood transactions and by wiring money made from marijuana distribution to third party business bank accounts. *Id*. at ¶¶10-11. The Indictment is vague as to how Terry Wu or Natalie Wu are involved in distributing marijuana. The Indictment describes only one deposit of money into Serendipity's account purportedly related to 25 pounds of marijuana, and no other marijuana-related activity. *Id*. at ¶48 (overt acts a through rrr).

7

Count Three alleges that Natalie Wu and Terry Wu played a role in a conspiracy to launder proceeds from illegal wildlife trafficking and marijuana distribution. *Id*. at ¶¶58-60.  The 11 overt acts describing wire transfers into multiple different bank accounts only list one account belonging to or controlled by Natalie Wu, Terry Wu, or Serendipity: Serendipity's Chase bank account ending in -5225. *Id*. at ¶60 a-k; ¶60 a.

## II.   Argument

### A.   Counts Two and Three are Improperly Joined with Count One and Must Be Severed Under Fed. R. Crim. P. 8.

The Eleventh Circuit "has made it clear that when more than one defendant is tried in a given action, all claims of misjoinder are properly addressed under Rule 8(b)." *United States v. Corbin*, 734 F.2d 643, 649 n.1 (11th Cir. 1984) (citing *United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir. 1975)[2] (*overruled on other grounds*). Also see *United States v. Jones*, No. CR 109-073, 2009 WL 2920894, at *1 (S.D. Ga. Sept. 11, 2009) ("When multiple defendants are indicted, joined offenses must be reviewed initially under the standard set forth under Fed. R. Crim. P. 8(b)") (citing *United States v. Grassi,* 616 F.2d 1295, 1302 (5th Cir. 1980)); *United States v. Gentile*, 495 F.2d 626, 628 fn.2 (5th Cir. 1974) ("It is well established that the more lenient standard of 8(a) providing for joinder of multiple offenses when only one defendant is tried is not applicable to a multiple defendant trial").

Rule 8(b) states that "[t]he indictment…may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses…" Fed. R. Crim. P. 8(b). The "same series of

---

[2] Fifth Circuit decisions rendered before October 1, 1981, are binding on panels of the Eleventh Circuit and the district courts in the circuit. *Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

acts or transactions" language of Rule 8(b) requires the government to "demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." *United States v. Wilson,* 894 F.2d 1245, 1253 (11th Cir. 1990) (quoting *United States v. Morales,* 868 F.2d 1562, 1569 (11th Cir. 1989)). "[W]hen ... the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present." *United States v. Weaver*, 905 F.2d 1466, 1477 (11th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991). (quoting *United States v. Nettles*, 470 F.2d 547, 551 (5th Cir. 1978)).

Courts look to the indictment to determine whether initial joinder is proper under Rule 8(b). *Id.* at 1476. Also see *United States v. Morales,* 868 F.2d 1562, 1567 (11th Cir. 1989) ("…joinder under Rule 8(b) is to be determined before trial by examining the allegations contained in the indictment").

### B. No substantial identity of facts or participants exists between Counts Two and Three, and Count One.

As plead on the face of the Indictment, Terry Wu and Natalie Wu had no discernible individual roles in Counts Two and Three. The lack of connection between the marijuana and money laundering conspiracies and the allegations in Count One that implicate the Wus in wildlife trafficking is similar to the lack of connection between two counts charged in *United States v. Gentile.*

In *Gentile*, the defendant moved to sever one count charging LSD distribution from two counts related to a PCP conspiracy. *United States v. Gentile,* 495 F.2d 626, 629–30 (5th Cir. 1974). The Court ruled that the LSD count "was not part of a 'series of acts or transactions' under 8(b)." *Id.* at 630. This conclusion was based on the fact that the two drug transactions occurred

almost three weeks apart, the sales took place at different locations, the transactions involved different drugs, and the sources of the drugs were different. *Id*. at 630-31. The Court concluded that Count Three was misjoined with the first two counts, and reversed Gentile's conviction. *Id.* at 628.

A Northern District of Georgia court granted a severance of counts after finding no substantial identity of facts or participants, and thus no series of acts under Rule 8(b), in *United States v. Caldwell*. The indictment plead conspiracies involving extortion and RICO violations, as well as substantive offenses such as mail fraud, perjury, and destruction of a vessel. *United States v. Caldwell*, 594 F. Supp. 548, 550–51 (N.D. Ga. 1984).

The Court found "no apparent common purpose or scheme" connecting mail fraud and destruction of a vessel counts on the one hand, and counts involving bribery and extortion on the other. *Id*. at 554. The mail fraud and destruction of a vessel counts were thus severed by the Court because the RICO indictment did not "clearly show the basis" for "a real factual link between these offenses and a common enterprise…". *Id*. Regarding its previous severance in the same case of one defendant's perjury charges, the Court explained there was "no identity of facts…between the perjury offenses and the various alleged acts of extortion and conspiracy." *Id*. at 556.

**C. Significant gaps in time between conspiracies show that Counts One, Two, and Three are not a "Series of Acts" under Rule 8(b).**

The gaps in time between conspiracies alleged in the Indictment in this case are much longer than the gap between offenses in *Gentile*, where a three-week gap was considered a factor in concluding that the LSD count was not part of a 'series of acts or transactions' with the PCP counts. *Gentile*, *supra*, 495 F.2d at 630-31. It should first be noted that the overarching dates of the conspiracy allegations are inconsistent with the dates of the first overt acts associated with

the various conspiracies. The government generally alleges that the conspiracies began "at least from in or about 2010…" See **Exh. A** at p. 5 ¶11 (allegation re: hiding drug trafficking proceeds through purported seafood transactions); p. 9 ¶ 27 (wire and mail fraud count); p. 27 ¶ 50 (marijuana conspiracy count); p. 30 ¶ 59 (money laundering conspiracy). However, in all instances, the first alleged overt acts for each of the conspiracies occurred well after 2010:

- o Earliest overt act alleged in furtherance of Count One: June 4, 2013 (a discrepancy of approximately **3.5 years**). **Exh. A** at p. 14 ¶ 48a.

- o Earliest overt act alleged for activity by Terry and Natalie Wu related to wildlife trafficking in furtherance of Count One: March 5, 2014 (a discrepancy of approximately **4 years, 3 months**). **Exh. A** at p. 14 ¶¶ 48c and 48d.

- o Earliest overt act alleged in furtherance of Count Two: November 14, 2018 (a discrepancy of approximately **8 years, 11 months**). **Exh. A** at p. 15 ¶ 48h.

- o Earliest overt act alleged overt act in furtherance of Count Three: July 24, 2019 (a discrepancy of approximately **9.5 years**). **Exh. A** at p. 32 ¶ 60a.

Turning to the relationships between the first overt acts of each conspiracy, the earliest overt act in furtherance of Count One occurred on June 4, 2013, while the earliest act for Count Two occurred on November 14, 2018, a gap of approximately 5 years and 5 months. The earliest overt acts in furtherance of Counts One and Three are separated by a gap of 6 years, 3 weeks. Even the gap between the first overt acts of the marijuana and money laundering conspiracies, which the government alleges went hand in hand, is 8 months and 10 days. See **Exh. A** at p. 3 ¶ 2 ("The Wu TCO further sought to hide millions of dollars in illegal proceeds by laundering the money through businesses and bank accounts").

These gaps demonstrate that the three conspiracies were distinct, discrete events, and not part of a continuous series of acts or transactions that justify joinder under Rule 8(b).

**D. Count One does not share a substantial identity of facts with Counts Two and Three because of the lack of alleged overt acts attributable to Terry Wu and Natalie Wu.**

The paucity of factual allegations in the Indictment linking Terry Wu and Natalie Wu individually to Counts Two and Three is pronounced, and further shows that the wildlife trafficking allegations underpinning Count One have nothing to do with the marijuana and money laundering conspiracies, and should therefore be severed.

Returning to the face of the Indictment, the first sign that Terry Wu and Natalie Wu were not involved in marijuana trafficking or money laundering is evident from the descriptions of their respective roles. Terry Wu is described as being "responsible for ordering when to export shark fins and authorizing payments for shark fins," and also for handling "the sale of shark fins to conspirators in Hong Kong." **Exh. A** at p. 5 ¶ 13. Natalie Wu is described as being "responsible for conducting financial transactions and signing checks for payment of shark fins." *Id.* at p. 5 ¶ 14. Neither of these descriptions includes any reference to a role in marijuana trafficking or money laundering.

In contrast, descriptions of other co-conspirators reference their involvement in the conspiracies they are alleged to have participated in. For example, Defendant Woonjin Lam, an alleged "associate" of Terry Wu, is described as having been "involved in the distribution of marijuana and money laundering." *Id.* at p.6 ¶ 15. Similarly, Defendant Heather Huong Ngoc Luu, another alleged "associate" of Terry Wu, is described to have been involved only in money laundering. *Id.* at p. 7 ¶ 21.

But the most telling omissions that clearly indicate a lack of any individual role in the marijuana and money laundering conspiracies for Terry Wu and Natalie Wu occur in the "Overt Acts" sections of the Indictment. *Id.* at pp. 13-26, 31-33. A careful review of all alleged overt acts related to Count Two reveals no mention of Terry Wu or Natalie Wu, see **Exh. A** at pp. 5-

12

20, 23, 26. Likewise, Terry Wu and Natalie Wu are never mentioned in the overt acts related to the money laundering conspiracy, see **Exh. A** at 20-25, 31-33. The lack of any alleged overt acts committed by Terry Wu in furtherance of Counts Two and Three is particularly telling, given the fact he was identified as an "associate" of Woonjin Lam and Heather Huong Ngoc Luu. *Id.* at p. 6 ¶ 15 and p. 7 ¶ 21. None of the co-conspirators are identified in the Indictment as "associates" of Natalie Wu.

In fact, the only overt acts attributable individually to Terry Wu or Natalie Wu occurred solely in relation to wildlife trafficking allegations, which are all contained within Count One. *Id.* at p. 14 ¶¶ 48a, 48c, and 48d. Analysis of the temporal gaps between the wildlife trafficking allegations and the other counts further demonstrates that these various conspiracies were not part of the same series of acts or transactions. The gaps between the first alleged overt act in furtherance of the wildlife trafficking conspiracy and the first overt acts of the other counts are 4 years, 8 months (Count Two) and 5 years, 4 months (Count Three). The gaps between the *last* alleged wildlife trafficking overt act and the first acts in furtherance of the other conspiracies are even more telling[3], suggesting that the wildlife trafficking conspiracy was completed before the other conspiracies even began.

These facts are in line with *Caldwell*, *supra*, where the Court found "no apparent common purpose or scheme" and no basis for "a real factual link" between counts, and granted severance under Rule 8(b), a remedy this Court should grant as well. *Caldwell*, *supra*, 594 F. Supp. at 554. Also see *United States v. Morris*, 176 F.Supp.2d 668, 671 (N.D. Tex. 2001) (two conspiracies had different timelines and no substantial identity of facts or participants), and

---

[3] The last alleged overt act for the wildlife trafficking conspiracy was January 17, 2017 (see **Exh. A** at p. 14 ¶¶ 48c and 48d), which yields a gap of 1 year 10 months from the first marijuana conspiracy overt act, and an approximately 2.5-year gap from the first money laundering conspiracy overt act.

*United States v. LaBrunerie*, 900 F.Supp. 1174, 1179 (W.D. Mo. 1995) ("The mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one common plan or scheme").

**E. The Wus' Lack of Knowledge of the Marijuana and Money Laundering Conspiracies Further Indicates that Count One Is Not Part of a Series of Acts with Counts Two and Three.**

While a defendant's knowledge of another conspiracy in an indictment is not required, lack of knowledge is an indicator of whether multiple conspiracies are sufficiently related and thus properly joined, an issue that was dealt with in *United States v. Ohle*. In *Ohle*, Count One charged a conspiracy to defraud, various tax crimes, and mail and wire fraud based on the defendants' development and implementation of a fraudulent tax shelter. *United States v. Ohle,* 678 F.Supp.2d 215, 219 (S.D.N.Y. 2010). In contrast, Count Five charged a conspiracy rooted in a fraudulent scheme to generate fees by using third party referrals of clients to the tax shelter implicated in Count One. *Id*. The defendants both moved to sever Count Five. *Id*. at 224.

The Court noted that the government's strongest argument, which was made in its Surreply and suggested that the two conspiracies had a common purpose based on a significant diversion of funds, was based on facts not alleged in the indictment. *Id*. at 224-25. When considering only the allegations in the indictment, the Court found that the Count Five conspiracy only had a minor role in financing the Count One conspiracy. *Id*. at 225.

The Court concluded that any similarity between the two conspiracies was "marginal," and that Counts One and Five were not unified by a "substantial identity of facts or participants." *Id*. at 226-27.  Further, the Court identified the indictment's failure to allege one defendant's knowledge of the Count One conspiracy as an indicator of whether or not a "common scheme or purpose" existed between counts. *Id.* at 225.

14

Similarly, in *United States v. Rajaratnam*, the Court severed certain conspiracy counts in an insider trading indictment based in part on the fact that "nothing…in the Indictment allege[d] that [the defendant] even knew anything about Count One; 'at most, [s]he had cursory knowledge of the other criminal activities....'" *United States v. Rajaratnam*, 753 F.Supp.2d 299, 309 (S.D.N.Y. 2010) (quoting *United States v. Lech,* 161 F.R.D. 255, 257 (S.D.N.Y.1995)).

Other than the wildlife trafficking allegations, the Indictment other than using general statutory language (Exhibit A at pgs. 27-28) fails to allege that either Terry Wu or Natalie Wu knew of the marijuana and money laundering conspiracies, a similar fact used by the *Ohle* court as an indicator that no "common scheme or purpose" existed between counts. *Ohle*, *supra*, 678 F.Supp.2d at 225. The logic of why a lack of knowledge should play a role in determining whether counts are misjoined under Rule 8(b) is simple: if defendants have no knowledge of a particular conspiracy, they can't knowingly participate in any of the acts that could give rise to a "substantial identity of facts" between the conspiracy they are a part of and the one they have no knowledge of.

Three overt act allegations pertain to Serendipity. On July 19, 2019, Woonjin Lan sent Serendipity's bank account information to receive a wire payment, allegedly for marijuana. **Exh. A** at p. 18 ¶ 48x. Later, on July 24, 2019, Serendipity received a wire transfer for $42,500. *Id*. at p. 18 ¶ 48aa; p. 32 ¶ 60a. On July 26, 2019, Woonjin Lam texted the cooperating source to confirm receipt of the transfer. *Id*. at p. 18 ¶ 48bb.

The Indictment does not allege any knowledge or individual involvement in this transaction by Terry Wu or Natalie Wu. Without specific allegations that Terry Wu and/or Natalie Wu had knowledge of the transfer, the Court and the parties are left with nothing more than conjecture about what role the movants played in this particular transaction and the marijuana conspiracy at large. The Indictment does not allege that Terry Wu and/or Natalie Wu

15

directed, coordinated with, or instructed any of their "associates" to conduct the transfer. The Indictment also fails to allege how Woonjin Lam received Serendipity's bank account information in the first place; the reader is left to wonder how, when, and by whom the information was given to Lam.

The untold mysteries of this Indictment related to one, isolated transaction cannot serve as the basis for joinder under Rule 8(b). In *Ohle*, *supra*, the Court found that when considering only the allegations in the indictment, the Count Five conspiracy only had a "minor role" in financing the Count One conspiracy. *Ohle*, *supra*, 678 F.Supp.2d at 225. At most, the Indictment vaguely insinuates that Terry Wu and Natalie Wu had mere "cursory" knowledge of the activities related to Counts Two and Three, a level of involvement which did not negate the need for severance in *Rajaratnam*, *supra*, 753 F.Supp.2d at 309. The Court in this case should come to the same conclusion regarding this isolated transaction.

**1.  Count One Should Be Severed from Counts Two and Three Under Rule 14 Because of the Risk of Prejudice to Natalie Wu and Terry Wu.**

Rule 14 of the Federal Rules of Criminal Procedure states that "[i]f the joinder of offenses…in an indictment…appears to prejudice a defendant…the court may order separate trials of counts…or provide any other relief that justice requires." Fed R. Crim. P. 14(a). A court may grant a severance under Rule 14 only (1) if a serious risk exists that a joint trial will compromise a specific trial right of one of the defendants, or (2) if a joint trial will prevent the jury from making a reliable judgment concerning guilt or innocence. *Zafiro v. United States,* 506 U.S. 534, 539 (1993).

The first situation for mandatory severance exists where a joint trial leads to the denial of a constitutional right. *United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004). Severance under *Zafiro's* second prong applies where "the sheer number of defendants and charges

16

with different standards of proof and culpability, along with [a] massive volume of evidence"
makes the jury's job of properly assessing "the guilt or innocence of each defendant
independently" nearly impossible. *Id.* at 1124. "Clear prejudice may result when the jury is unable
to separate the evidence and apply it to the proper offenses, or where the jury might use the
evidence of one of the crimes to infer criminal disposition to commit the other crimes charged."
*United States v. Fortenberry,* 914 F.2d 671, 675 (5th Cir. 1990), *reh'g denied with opinion,* 919
F.2d 923 (5th Cir. 1990), *cert. denied,* 499 U.S. 930 (1991).

    **F.** **Litigating Count One with Counts Two and Three would prejudice Natalie Wu and Terry Wu because the jury would hear evidence about conspiracies the Wus had little or nothing to do with.**

    The fact that the Indictment does not implicate the Wus in any meaningful way in Counts
Two and Three makes the prospect of joinder all the more perilous, due in large part to the
voluminous evidence of their codefendants' extensive and exclusive participation in the
marijuana and money laundering conspiracies. The volume of evidence presented in a joint trial
was at issue in *United States v. Erwin.*

    In *United States v. Erwin,* a superseding indictment charged twenty-four people with
counts ranging from racketeering to perjury; six defendants contended they were misjoined or
that the court erred in refusing to sever all or some of their counts. *United States v. Erwin,* 793
F.2d 656, 660-665 (5th Cir. 1986). The Court reversed the perjury convictions against one
defendant, stating that "very little of the mountainous evidence" presented at trial was "usable
against her, and almost none of it applied directly." *Id.* at 666. The Court said "[t]he prejudice
she suffered from the joint trial…far outweighed any benefit of judicial economy," and that the
district court had abused its discretion in denying her severance motion. *Id.*

    The case of *United States v. Litwok,* in which the defendant's right to a fair trial was
impacted by a failure to grant severance, presents a cautionary tale of the level of prejudice that

will result from trying Count One with Counts Two and Three in this case. The defendant in *Litwok* was found guilty of one count of mail fraud and three counts of tax evasion. *United States v. Litwok,* 678 F.3d 208, 210 (2nd Cir. 2012). After reviewing the record, the Court found that the jury's view of Litwok had been "inevitably colored" by evidence she defrauded her investors of millions of dollars, a fact that was unrelated to the tax evasion counts. *Id*. at 217. The prejudice suffered became apparent when the government pointed to this evidence to describe the defendant as "a cheat, a liar, and a thief," and to otherwise contend she had a propensity to engage in fraudulent activity. *Id*. The Court concluded that the misjoinder prejudicially affected the jury's deliberations, and vacated the convictions. *Id*. at 218.

The court in *United States v. Rajaratnam*, discussed *infra*, acknowledged the persuasiveness of the defendants' Rule 14 arguments despite the fact it granted severance under Rule 8(b). *Rajaratnam*, 753 F.Supp.2d at 316. The Court noted that the counts it had just severed "had nothing to do" with one defendant, and that trying those charges with the others would create the risk of subjecting the jury "to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve [the defendant] in any way" such that "mounting proof of the guilt of one is likely to affect another." *Id*. (citing *United States v. Branker,* 395 F.2d 881, 888 (2nd Cir. 1968) (quotation marks omitted).

Much like the defendant in *Litwok*, who the government branded "a cheat, a liar, and a thief," if all counts are tried together, Natalie Wu and Terry Wu would be tainted in the eyes of the jury as "drug dealers" or worse, even though little to none of the evidence related to Counts Two and Three speaks to their involvement in the marijuana or money laundering conspiracies.

The prejudice rises from the fact that although the Wus were not involved in marijuana distribution and money laundering, during a joint trial, "very little of the mountainous evidence" that would be presented against their codefendants would be "usable against [them], and almost

none of it [would apply] directly." *Erwin*, *supra*, 793 F.2d at 666. For example, only one wire transfer out of all those listed in Counts One and Three relates to Natalie Wu and Terry Wu, and they are not implicated in any of the overt acts related to Counts Two and Three, other than this one transaction. Out of the 11 bank accounts identified in Count Three, only one is linked to Serendipity and the Wus.

Further, the effect on the jury from trying Count One with Counts Two and Three would be similar to the prejudice the court in *Rajaratnam* envisioned and wisely avoided by granting severance. Here too, like in *Rajaratnam*, Counts Two and Three have "nothing to do" with Terry Wu and Natalie Wu. *Rajaratnam*, *supra*, 753 F.Supp.2d at 316. Subjecting a jury "to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve [the Wus] in any way" would result in compelling prejudice and a violation of their right to a fair trial on Count One. *Id*.

### G. Litigating Count One with Counts Two and Three would force the Wus to choose between antagonistic defenses, thus giving rise to compelling prejudice if severance is not granted.

The court in *United States v. Hassoun* sought to avoid any "undue prejudice that could potentially taint the jury…" *United States v. Hassoun*, 477 F.Supp.2d 1210, 1230 (S.D. Fla. 2007). The defendant claimed he would be forced to choose between "antagonistic constitutional rights" in a joint trial while simultaneously defending against falsity counts and conspiracy/material support for terrorism counts. *Id*. at 1229.

The Court reasoned that if these two sets of counts were tried together, the defendant would be forced to choose between two strategies and unnecessarily give up some defenses he was constitutionally entitled to. *Id*. Importantly, the Court posited that a jury instruction to disregard any falsity count defenses when considering the material support and conspiracy counts would not "ameliorate the problem." *Id*.  The Court found the defendant's arguments

19

"compelling" and granted severance, due in part to the fact that the government failed to provide any persuasive assurances that trying the counts together would not result in substantial undue prejudice. *Id*. at 1231-32.

Natalie Wu and Terry Wu are faced with a similar situation to that faced in *Hassoun,* because they would have to choose between antagonistic defenses if all counts are tried together. A choice by either defendant to testify on their own behalf in defense to Count One would open them up to cross-examination on the other counts, on which the Indictment fails to allege a meaningful role for the Wus. This choice pits the right to be free from self-incrimination against the right to present a defense and to testify at trial.

Thus, Natalie Wu and Terry Wu would be forced to forfeit a constitutional right and defense strategy available to counter Counts Two and Three (exercising their Fifth Amendment right against self-incrimination and not testifying) in order to mount an effective defense as to Count One (by testifying). The risk of manifest and compelling prejudice is apparent when the Wus' "Hobson's Choice" is coupled with their non-existent involvement in Counts Two and Three as alleged on the face of the Indictment. The Court can obviate this prejudice by severing a trial on Count One from Counts Two and Three, and if severance is granted, by striking any references to marijuana or money laundering from Count One.

## III.   Conclusion

Count One is misjoined with Counts Two and Three under Rule 8(b), and the Court should therefore order a separate trial for Count One. Further, the prejudice from trying all counts together is clear under Rule 14; the Court can avoid this prejudice and guarantee a fair trial for Natalie Wu and Terry Wu by ordering severance of Count One. Striking all mention of the marijuana and money laundering conspiracies from Count One will ensure a fair trial because Count One will be focused on what implicates Natalie Wu and Terry Wu the most: the wildlife

trafficking allegations. Based on the foregoing, the Wus respectfully request severance of Count One from Counts Two and Three.

Dated: December 9, 2021                Respectfully submitted,

                                       By, _____

                                       MARILYN E. BEDNARSKI

                                       Attorney for Defendant Natalie Wu

                                       Ca. Bar. No. 105322
                                       975 East Green Street
                                       Pasadena, CA. 91106
                                       Email: mbednarski@mbllegal.com
                                       Telephone: (626) 844-7660
                                       Fax: (626) 844-7670


Dated: December 9, 2021                Respectfully submitted,

                                       By, /s/ Randy Sue Pollock

                                       RANDY SUE POLLOCK

                                       Attorney for Defendant Terry Wu

                                       Ca. Bar. No. 64493
                                       286 Santa Clara Avenue
                                       Oakland, CA. 94610
                                       Email: rsp@rspollocklaw.com
                                       Telephone: 510-736-9967
                                       Fax: 510-380-6551

Dated: December 9, 2021                Respectfully submitted,


                                       By, /s/ Bruce S. Harvey

                                       LAW OFFICE OF BRUCE S. HARVEY
                                       Attorney for **Defendant**
                                       **Serendipity Business Solutions, LLC**
                                       Bruce S. Harvey, Georgia Bar No. 335175
                                       146 Nassau Street
                                       Atlanta, Georgia 30303
                                       (404) 659-4628

21

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on December 9, 2021, electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and request the Court to serve the same electronically on the U.S. Attorneys and all counsel and parties of record in this matter.

MARILYN E. BEDNARSKI
Admitted, *Pro Hac Vice*