**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **)** |
| | **)** |
| **v.** | **) CASE NO: 4:20-CR-56-RSB-CLR-Def. 1, 2** |
| | **) & 3** |
| **SERENDIPITY BUSINESS** | **)** |
| **SOLUTIONS, LLC,** *et al.* | **)** |
| | **)** |

**DEFENDANTS SERENDIPITY BUSINESS SOLUTIONS, LLC, TERRY XING ZHAO WU, AND NATALIE YE MAN CHAN WU'S JOINT REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS 1 AND 3**

## I.     Introduction

The government's Opposition fails to cure any of the deficiencies in Counts 1 and 3 of the Indictment. It attempts to reframe the lack of legal sufficiency of Counts 1 and 3 as a "dispute over the sufficiency of the government's evidence." Govt. Opp., Dkt. 438 at 1. That mischaracterization reflects its misunderstanding of the issue. Rather than explain *how* the alleged conduct by the Wu Defendants[1] violates any law or subjects them to the charged counts, the government merely repeats text from the Indictment and does nothing to enlighten the Wu Defendants of the charges they must defend against.

## II.     The Government's Assertion That this Indictment Is Sufficient Is Belied By the Indictment Itself

The parties agree on the general standard for evaluating the legal sufficiency of an indictment (i.e., "[a]n indictment is considered legally sufficient if it: (1) presents the

---

[1] For efficiency in this Reply, Terry Wu, Natalie Wu and Serendipity are collectively referred to as "the Wu Defendants."

1

essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense," (*United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009); Dkt. 438 at 2)). Indeed, both parties cite *United States v. Sharpe*, 438 F.3d 1257 (11th Cir.2006). The parties disagree about what constitutes "sufficient notice" of what the defendants must be prepared to meet. The government ignores well-established case precedent requiring that an indictment that references a statute "be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir.2006) (*quoting United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir.2003).[2] The government cannot escape its failure to do so.

### a.  Count 1 Is Not Sufficiently Plead

Charge 1 alleges under Title 18 U.S.C. 1349 that Defendants conspired to commit mail and wire fraud. A conspiracy to do something that is not a crime is not a 1349 conspiracy. Said differently, if the conduct that is the objective of the conspiracy is not a crime if carried through to a successful conclusion, then the conspiracy to do that conduct is not a crime. *See* 11th Circuit Pattern Jury Instruction Criminal Cases No. O54

---

[2] The government cites to *United States v. Fern*, 155 F.3d 1318 (11th Cir. 1998) to argue that if an indictment refers to the statute on which the charge was based, reference to the statutory language is sufficient. The government makes this statement with complete disregard to the more recent 11th Circuit case law requiring indictments to include a statement of the facts and circumstances detailed enough to inform the accused of the specific offense with which he is charged. *Sharpe*, 438 F.3d at 1263.

(Conspiracy to Commit [Mail] Fraud, § 1349) (Dec. 2019 rev.) ("It's a Federal crime to knowingly and willfully conspire or agree with someone to do something that, if actually carried out, would result in the crime of mail fraud.").[3] For this reason, to adequately plead a conspiracy charge, it follows that the government must plead facts and a theory to support an underlying substantive charge, that if carried out, would result in the crime of mail and wire fraud. *See United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002) (holding that the allegations in an indictment for conspiracy to commit mail fraud and for the substantive offense of mail fraud failed to charge offenses as a matter of law because the alleged conduct did not violate the substantive charge of mail fraud where there was no intent to deceive, and therefore no "scheme to defraud"); *United States v. Tomey*, 222 F. Supp. 3d 1106, 1109 (N.D. Fla. 2016), *aff'd*, 783 F. App'x 832 (11th Cir. 2019) ("The elements of conspiracy to commit mail or wire fraud are: (1) the existence of an agreement or common purpose to execute *a scheme to defraud*, and (2) use of the mail or wire systems to further the scheme.") (emphasis added).

Here, the Indictment fails to sufficiently describe the underlying substantive crimes that are purportedly the object of the conspiracy in Count 1. The pattern instructions addressing what constitutes the substantive offense of mail or wire fraud are found in O50.1 (Mail Fraud, § 1341) and O51 (Wire Fraud, § 1343). Both fraud offenses require proof that the scheme was to defraud someone using materially false or fraudulent pretenses, representations or promises, and that there was an intent to defraud. Furthermore, intent to

---

[3] The same sentence applies to wire fraud and the instruction is intended to be modified accordingly for wire fraud. Committee notes to Jury Instruction No. O54.

deceive without intent to cause loss or injury is not sufficient to prove intent to defraud. *See e.g.* O51 (1343 wire fraud instruction and Committee notes citing *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) ("Wire fraud requires showing (1) that the Defendant knowingly devised or participated in a scheme to defraud; (2) that the Defendant did so willfully and with an intent to defraud; and (3) that the Defendant used interstate wires for the purpose of executing the scheme.").

A scheme to defraud requires an intended victim(s) as well as the intent to obtain money or something of value. *See* Committee notes to Instruction No. O50.1 (Mail Fraud, § 1341), and to Instruction No. O51 (Wire Fraud, § 1343) citing *United States v. Cooper*, 132 F.3d 1400, 1405 (11th Cir. 1998). Here the Indictment fails to allege an intended victim(s) and fails to identify the property or thing of value sought. Without this specificity it follows that the Wu Defendants are not sufficiently apprised of what they allegedly conspired to do.

### i.  This Indictment Does Not Describe an Alleged Intended Victim

If we are to assume that the intended victim was one or more government agency(ies) with oversight over wildlife trafficking, or a government agency that issues permits or approves import or export of wildlife products, then the question arises how defendants intended to deceive those agencies. Not all bad or deceptive conduct is sufficient to prove intent to defraud within the § 1341 or § 1343 mail or wire fraud statutes. For instance, false affidavits threatening to sue or causing economic harm were not sufficient where defendants knew they could not deceive the intended victim. *United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002) ("Since there was no intent to

4

deceive, there was no 'scheme to defraud,' . . . The allegations in the indictment for conspiracy to commit mail fraud and for the substantive offense of mail fraud therefore fail to charge offenses as a matter of law"); *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir.1991) ("A defendant cannot possibly intend to deceive someone if he does not believe that his intended 'victim' will act on his deception."); and, *Norton v. United States*, 92 F.2d 753, 755 (9th Cir.1937) ("There can be no intent to deceive where it is known to the party making the representations that no deception can result.").

### ii. The Indictment Does Not Describe an Alleged Thing of Value or Property Sought

If we are to assume that the alleged fraudulent applications to obtain permits or to approve export or import of wildlife products was the property sought in the scheme, such permits, analogous to a state or municipal license, would not constitute legally sufficient "property" within the legal reach of a § 1341 or § 1343 mail or wire fraud. A permit is similar to a license, which is not property under the mail and wire fraud statutes. *Cleveland v. United States*, 531 U.S. 12, 15 (2000) (addressing "property" for purposes of mail fraud statute).

The government's response to the Wu Defendants' complaint that the Indictment is legally insufficient fails to explain a fraudulent scheme, what made it fraudulent, who the conspirators were deceiving, and what property or thing of value the conspirators sought. First, the government states that the Indictment "provides an introduction explaining the relevant laws concerning shark fins," (Dkt. 438 at 2); yet the government does not, just as the Indictment does not, explain how those laws are relevant and which, if any, were

violated by any of the Wu Defendants. Similarly, the government states that the Indictment outlines the members of the organization and their roles, including "shark fin dealers illegally exporting shark fins," (Dkt. 438 at 3); yet does not explain what was illegal about the way shark fins were exported. Finally, the government states that members of the conspiracy created false applications for import/export licenses and created fake invoices, (Dkt. 438 at 3); yet never explains what was false or fake about the applications and invoices. The fact that the Indictment contains other allegations that are required for a conspiracy count (the members, manner and means, and overt acts) does not cure the deficiency of failure to describe a scheme to defraud, i.e. specify any intended victim or thing of value sought. Dkt. 438 at 3-4 (merely arguing Count 1 contains the members, manner and means, and overt acts).

### iii. The Wu Defendants Are Prejudiced by the Lack of Notice as to Intended Victim and Property or Thing of Value

The government's failure to allege with particularity and specificity the intended victim(s) and what money, property, or thing of value was sought in the scheme denies the Wu Defendants sufficient notice to defend. If one cannot be guilty of a scheme to defraud if s/he did not intend to deceive someone, then one cannot be guilty of conspiring to do that. If one cannot be guilty of a scheme to defraud an agency of a permit to export or import shark fins, because a permit is not property, then one cannot be guilty of conspiring to do that.

These deficiencies of pleading also affect the analysis of what is 404(b) evidence and any pretrial litigation of bad acts evidence in this case. For example, the government's

response also references "sea cucumbers" but it is unclear how or what transaction(s) involving sea cucumbers is alleged to be illegal. Another example is the Wu Defendants' joint objection to admission of Harrison's prior misdemeanor convictions or Castellano's conviction for theft which purportedly involved regulated fish products. Without definition of the nature of the scheme to defraud it is difficult to articulate how such prior conduct would be relevant admissible evidence or excludable evidence in this scheme.

### b.  Count 3 Is Not Sufficiently Plead

The same pleading deficiencies raised with respect to Count 1 exist with respect to Count 3, the money laundering conspiracy. If the conspiracy to commit mail and wire fraud is the unlawful activity that produced the proceeds that were the subject of the money laundering (*see* Dkt. 3 at 31, ¶60), the Wu Defendants face the same difficulty in understanding the money laundering charge as they do in understanding how they schemed to commit mail or wire fraud. A scheme to defraud would not be illegal within the reach of the § 1341 and § 1343 statutes without a person sought to be deceived, or without money, property or thing of value sought to be obtained.  If the scheme from which the funds derived was not illegal, then there can be no money laundering. Additionally, the government has not explained how any of the transactions listed in Count 3 are linked to proceeds from any specific alleged activity. Without any additional allegations, the Wu Defendants have no way of knowing what about the *single* transaction specific to the Serendipity account was illegal or how it violates 1956(a)(l)(A)(i).

The government's Opposition fails to address this core deficiency of Counts 1 and 3: what made the mail and/or wire fraud scheme illegal? The Indictment's failure to include

sufficient notice to the Wu Defendants of the offenses with which they are charged requires that Counts 1 and 3 be dismissed.

### c.   Count 1 Is Duplicitous Based on the Conduct Alleged in the Overt Acts

Duplicity occurs when two or more distinct and separate offenses are joined in a single count. *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997). The government asserts that when assessing whether a single conspiracy or multiple conspiracies exist, "courts consider three factors: (1) whether a common goal existed, (2) the nature of the scheme, and (3) overlap of participants." Dkt. 438 at 5 (*citing United States v. Champion*, 813 F.2d 1154, 1166 (11th Cir. 1987). It contends that here "Defendants are all charged with having the same common goal, with the exact same scheme, and the same participants." Dkt. 438 at 6. But this assertion is unfounded and is not supported by the case law, which bears out that "[i]t is clearly not sufficient simply to say that the defendants each shared a common goal, to-wit: profit from the sale of [drugs]." *United States v. Glinton*, 154 F.3d 1245, 1251 (11th Cir. 1998). Rather, "[i]n order to constitute a single conspiracy there must be a single enterprise which sets up a common goal connecting each defendant." *Id.* (*citing United States v. Coy*, 19 F.3d 629, 633-34 (11th Cir.1994) (distinct distribution schemes and absence of overlapping participants indicates two separate conspiracies); *United States v. Castro*, 829 F.2d 1038, 1045 (11th Cir.1987) ("similar illegal objective" not enough to support single conspiracy)).

Here, because the fraud scheme is not sufficiently defined, the Indictment does not support the government's assertion that all alleged participants had the "same common goal," nor that they are all charged with the "same exact scheme." How can one determine

a common goal or common fraud scheme when there is no alleged victim and no alleged thing of value sought? Thus, the first two of three factors cited as relevant to the determination of whether a single conspiracy or multiple conspiracies exist are not present here. *Champion*, 813 F. 2d at 1166.

The third factor, "overlap of participants," at first blush appears present, as the introductory paragraph of Count 1 (Dkt. 3 at 9, ¶27) lists all 14 defendants, but a closer study of Count 1 reveals otherwise. The overt act allegations involving Serendipity and Phoenix's purchase, payment and exportation of shark fins occur between March 5, 2014 and April, 2017, (Dkt. 3 at 14, ¶48 c -f), and the overt acts involving marijuana distribution, transportation, cash payments and communications take place between July 2017 and March 2020, (Dkt. 3 at 15-25, ¶48 g-hhh).[4]  There is *no* temporal overlap with the respective overt acts. Additionally, the overt acts attributed to the Wu Defendants and Harrison Defendants are nearly solely in relation to wildlife trafficking,[5] while the overt acts regarding marijuana trafficking involve a completely separate set of defendants, none of whom are named in any wildlife trafficking overt acts.[6]

---

[4] The allegations at the very end of Count 1 concerning shark fins do not appear to have anything to do with Serendipity, rather only allege conduct by Harrison/Phoenix. *See* Dkt. 3 at 25-26, ¶48 iii-rrr.

[5] Wildlife trafficking overt acts alleged at ¶¶48 a-f, ¶¶48 iii to nnn  and ¶¶ppp-rrr (Dkt. 3 at 14 and 25-26). The only exception is an overt act alleging that Serendipity received a wire transfer for advance payment for marijuana to be mailed to Savannah, Georgia. Dkt. 3 at 18, ¶48 aa.

[6] The Marijuana trafficking activity alleged at ¶¶48g to hhh allege activity by defendants Lam, Pang (Anthony) Wu, Heather Luu, Castellanos, Quang, Shook and Nguyen. Dkt. 3 at 14-25. Again, the only exception is an overt act alleging that Serendipity received a wire transfer for advance payment for marijuana to be mailed to Savannah, Georgia. Dkt. 3 at 18, ¶48 aa.

9

Based on the distinct activities (in nature and in time) and distinct sets of defendants, the only logical conclusion is that two separate conspiracies are alleged in Count 1.

### d.  The Government Must Elect Which Conspiracy to Proceed On

With respect to their duplicity argument, the Wu Defendants respectfully ask this Court for the reasons raised herein and in the Motion to Dismiss to order the government to either divide the duplicitous conspiracies by superseding indictment or alternatively, elect which conspiracy to proceed on. Dkt. 410 at 16-17.

Dated: January 31, 2022                    Respectfully submitted,

MARILYN E. BEDNARSKI
Attorney for Defendant Natalie Wu

Ca. Bar. No. 105322
975 East Green Street
Pasadena, CA. 91106
Email: mbednarski@mbllegal.com
Telephone: (626) 844-7660
Fax: (626) 844-7670

Dated: January 31, 2022                    Respectfully submitted,

By: ___/s/ Randy Sue Pollock_____
RANDY SUE POLLOCK
Attorney for Defendant Terry Wu

Ca. Bar. No. 64493
286 Santa Clara Avenue
Oakland, CA. 94610
Email: rsp@rspollocklaw.com
Telephone: 510-736-9967
Fax: 510-380-6551

[Additional signatures on following page]

10

Dated: January 31, 2022                    Respectfully submitted,

                                            By: _____*/s/ Bruce S. Harvey*_____
                                                 BRUCE S. HARVEY
                                                 Attorney for Defendant Serendipity
                                                 Business Solutions, LLC

                                                 Ga. Bar No. 335175
                                                 146 Nassau Street, NW
                                                 Atlanta, Georgia 30303
                                                 Email: bruce@bharveylawfirm.com
                                                 Telephone: (404) 659-4628
                                                 Fax: (404) 681-3953

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on January 31, 2022 electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and request the Court to serve the same electronically on the U.S. Attorneys and all counsel and parties of record in this matter.

MARILYN E. BEDNARSKI
Admitted, *Pro Hac Vice*